## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHRISTOPHER BALK and ANTHONY GALLWAY, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**NY FRESH MEX, LLC, CENTER MEX, INC., PALM TREE VENTURES, INC., and MIDDLE COUNTRY MEX, INC.**<br><br>**Defendants.** | **Case No.  22 Civ. 7253**<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiffs Christopher Balk and Anthony Gallway (together, "Plaintiffs"), on behalf of themselves and all others similarly situated employees, by and through their attorneys Kessler Matura P.C., complaining of NY Fresh Mex, LLC ("Cabo Fresh Stony Brook"), Center Mex, Inc. ("Cabo Fresh Centereach"), Palm Tree Ventures, Inc., ("Cabo Fresh Commack"), and Middle Country Mex, Inc. ("Cabo Fresh Smithtown") (collectively, "Defendants" or "Cabo Fresh") allege as follows:

### INTRODUCTION

1.      Plaintiffs bring this lawsuit to recover unpaid overtime wages, spread of hours pay, and other damages against Defendants for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the New York Labor Law ("NYLL"), Articles 6 and 19, on behalf of themselves and all assistant general managers, and similar positions (together, "AGMs"), employed by Defendants between November 2016 to present.

2.      Plaintiffs and their coworkers are current and former AGMs employed by Defendants across Suffolk County, New York.

3.     As policy and practice, Defendants hired AGMs and misclassified them as exempt from FLSA and NYLL's overtime requirements, and the NYLL's spread of hours requirement.

4.     While employed by Defendants, Plaintiffs contend that they and other similarly situated AGMs consistently worked over 40 hours per week without receiving overtime pay for all hours worked over 40.

5.     And, AGMs regularly worked shifts, with a "spread" of over 10 hours—i.e., the end of the employee's shift is greater than 10 hours from its start – without receiving an additional hour of pay at the minimum wage ("spread-of-hours").

6.     As a result of misclassifying AGMs, Defendants violated the FLSA and NYLL, by failing to pay AGMs their proper wages and provide accurate wage statements.

7.     Defendants further violated the NYLL by failing to provide employees with wage notices.

8.     Plaintiffs bring the First Cause of Action under FLSA § 216(b), for unpaid overtime wages, liquidated damages and interest, arising from Defendants violation of the FLSA.

9.     Because Plaintiffs and their coworkers are similarly situated and the statute of limitations is continuing to run against them until they file a consent to join in this action, Plaintiffs, seek certification of this matter as a collective action and leave to notify the "FLSA Collective."

10.     Plaintiffs bring the Second, Third, Fourth, and Fifth Causes of Action arising from Defendants violation of the NYLL.

11.     Because the harm suffered by Plaintiffs and their coworkers was widespread, Plaintiffs bring this case as a class action and will seek certification under Federal Rule of Civil Procedure 23 ("Rule 23").

## JURISDICTION & VENUE

12.     Jurisdiction of the Court over this controversy is based upon, 29 U.S.C. § 201, *et seq.*, 28 U.S.C. 1331 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

13.     This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to this action occurred in Suffolk County.

14.     This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

## THE PARTIES

### *Plaintiff Christopher Balk*

15.     Mr. Balk is a resident of Suffolk County, New York.

16.     Mr. Balk was employed by Cabo Fresh Stony Brook as an AGM from approximately June 20, 2021 through August 23, 2022.

17.     At all times relevant, Mr. Balk was an "employee" as defined by 29 U.S.C. § 203(e)(1).

18.     At all times relevant, Mr. Balk was an "employee" as defined by NYLL §§ 190(2), 651(5).

19.     At all times relevant, Mr. Balk was an "employee" as defined by the Hospitality Wage Order. 12 N.Y.C.R.R. §146-3.2.

20.     Mr. Balk has expressed his consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A.

### *Plaintiff Anthony Gallway*

21.     Mr. Gallway is a resident of Suffolk County, New York.

22.     Mr. Gallway was employed by Cabo Fresh Stony Brook as an AGM from approximately May 27, 2022 through August 25, 2022.

23.     At all times relevant, Mr. Gallway was an "employee" as defined by 29 U.S.C. § 203(e)(1).

24.     At all times relevant, Mr. Gallway was an "employee" as defined by NYLL §§ 190(2), 651(5).

25.     At all times relevant, Gallway was an "employee" as defined by the Hospitality Wage Order.  12 N.Y.C.R.R. §146-3.2.

26.     Mr. Gallway has expressed his consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b). *See* Ex. A.

***Defendant NY Fresh Mex, LLC***

27.     Upon information and belief, NY Fresh Mex, LLC doing business as Cabo Fresh was and still is a domestic corporation authorized to do business pursuant to the laws of the State of New York.

28.     Upon information and belief, NY Fresh Mex, LLC's principal place of business is located at 2182 Nesconset Hwy, Stony Brook, NY 11790.

29.     At all times hereinafter mentioned, NY Fresh Mex, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3), 651(6).

30.     At all times hereinafter mentioned, NY Fresh Mex, LLC was and still is a "restaurant" within the meaning of the Hospitality Wage Order. 12 N.Y.C.R.R. §146-3.1(b).

**Defendant Center Mex, Inc.**

31.     Upon information and belief, Center Mex, Inc. doing business as Cabo Fresh was and still is a domestic corporation authorized to do business pursuant to the laws of the State of New York.

32.     Upon information and belief, Center Mex, Inc.'s principal place of business is located at 1759 Middle Country Road, Unit M, Centereach, NY 11720.

33.     At all times hereinafter mentioned, Center Mex, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and the NYLL §§ 190(3), 651(6).

34.     At all times hereinafter mentioned, Center Mex, Inc. was and still is a "restaurant" within the meaning of the Hospitality Wage Order. 12 N.Y.C.R.R. §146-3.1(b).

**Defendant Palm Tree Ventures, Inc.**

35.     Upon information and belief, Palm Tree Ventures, Inc. doing business as Cabo Fresh was and still is a domestic corporation authorized to do business pursuant to the laws of the State of New York.

36.     Upon information and belief, Palm Tree Ventures, Inc.'s principal place of business is located at 5026 Jericho Turnpike, Commack, NY 11725.

37.     At all times hereinafter mentioned, Palm Tree Ventures, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and the NYLL §§ 190(3), 651(6).

38.     At all times hereinafter mentioned, Center Mex, Inc. was and still is a "restaurant" within the meaning of the Hospitality Wage Order. 12 N.Y.C.R.R. §146-3.1(b).

***Defendant Middle Country Mex, Inc.***

39.     Upon information and belief, Middle Country Mex, Inc. doing business as Cabo Fresh was and still is a domestic corporation authorized to do business pursuant to the laws of the State of New York.

40.     Upon information and belief, Middle Country Mex, Inc.'s principal place of business is located at 79 Route 111, Smithtown, NY 11787.

41.     At all times hereinafter mentioned, Middle Country Mex, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and the NYLL §§ 190(3), 651(6).

42.     At all times hereinafter mentioned, Middle Country Mex, Inc. was and still is a "restaurant" within the meaning of the Hospitality Wage Order. 12 N.Y.C.R.R. §146-3.1(b).

***Cabo Fresh Constitutes a Joint Employer***

43.     Cabo Fresh is a unified operation.

44.     Cabo Fresh constitutes a common enterprise.

45.     Cabo Fresh has interrelated operations.

46.     Cabo Fresh has common management.

47.     Cabo Fresh has a centralized control of labor relations.

48.     Defendants use the same the handbook for all Cabo Fresh locations outlining policies, procedures, and employee instructions.

49.     Cabo Fresh has common ownership.

50.     James DiVilio, holds himself out to be the "Founder/ Principal Owner" of "Cabo Fresh California Mexican Grill, Dec. 2010 – Present," which includes locations in "Centereach, New York; Stony Brook, New York; Smithtown, New York; and Commack, New York." *See* https://www.linkedin.com/in/james-divilio-19a1b725?original_referer= (last accessed, November 14, 2022).

51.     Cabo Fresh shares employees.

52.     Cabo Fresh employs individuals that float between the four restaurants to train new employees.

53.     Cabo Fresh commingles funds between the four restaurants.

54.     Cabo Fresh constitutes a single employer.

55.     At all relevant times, Cabo Fresh maintained control, oversight, and direction over shared employment practices, including the terms of Plaintiffs employment.

56.     At all times hereinafter mentioned, Defendants individually and collectively were and still are "employers" within the meaning of 29 U.S.C. § 203(d) and the NYLL §§ 190(3), 651(6).

57.     At all times hereinafter mentioned, the activities of Defendants consist of an "enterprise" within the meaning of 29 U.S.C. § 203 (r) & (s).

58.     At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or the production of goods for commerce or in handling, selling, or otherwise working on goods and materials which have moved in or have been produced for commerce within the meaning of 29 U.S.C. § 203(b), (g), (i), (j), (r), & (s).

59.     Upon information and belief, Defendants collective annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## FLSA COLLECTIVE ACTION ALLEGATIONS

60.     Plaintiffs seek to proceed as a collective action with regards to the First Cause of Action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated individuals in the FLSA Collective who elect to opt-in to this action.

61.     Upon information and belief, there are approximately more than 50 AGMs that are similarly situated to the Plaintiffs who were denied overtime pay by Defendants.

62.     Plaintiffs represent other employees and are acting on behalf of Defendants' former and current employees interests as well as their own interests in bringing this action.

63.     Plaintiffs seek to proceed as a collective action with regard to the First Cause of Action, pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following class of persons:

> All current and former employees of Defendants working as AGMs throughout Suffolk County during the time period from three years prior to the filing of their respective consent to join forms.

64.     Defendants required Plaintiffs, and all individuals employed as AGMs to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least one and one-half times their regular hourly rate.

65.     Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective, an overtime premium of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per week.

66.     The FLSA Collective is readily identifiable and locatable through the use of the Defendants records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be

unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring the Second, Third, Fourth, and Fifth Causes of Action on behalf of themselves as the class representatives (hereinafter referred to as the "New York Class Representatives") and the Class, pursuant to Rule 23.  The Rule 23 Class is defined as follows:

> All current and former employees of Defendants working as AGMs throughout Suffolk County during the time period from six years prior to the filing of the complaint until the date of judgement in this action.

68.     The persons in the Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the control of Defendants.

69.     Upon information and belief, the size of the Class exceeds 50 individuals.

70.     At any given time, Defendants employ several AGMs across the four restaurants.

71.     Common questions of law and fact exist as to the Class that predominate over any questions only affecting them individually and include, but are not limited to:

a.     Whether Defendants failed to pay proper overtime compensation for all workhours and violated the NYLL and the supporting New York State Department of Labor regulations;

b.     Whether Defendants failed to keep accurate time records for all hours worked by New York Class Representatives and the Class;

c.     Whether proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

d.     Whether Defendants failed to furnish the New York Class Representatives and Class with pay notices as required by NYLL § 195;

e.      Whether Defendants failed to furnish the New York Class Representatives and Class with an accurate statement of, inter alia, wages, hours worked, and rates paid as required by NYLL § 195;

f.      The nature and extent of Class-wide injury and the appropriate measure of damages sustained by the New York Class Representatives and the Class; and

g.      Whether Defendants acted willfully or with reckless disregard in their failure to pay the New York Class Representatives and the Class.

72.     The New York Class Representatives will fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.

73.     The New York Class Representatives are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

74.     The New York Class Representatives and the Class have been equally affected by Defendants' failure to pay proper wages.  Moreover, members of the Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

75.     The New York Class Representatives claims are typical of those of the Class.  The New York Class Representatives and the other Class members were subjected to Defendants' policies, practices, programs, procedures, protocols, and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.

76.      The New York Class Representatives job duties are typical of those of the Class.

77.     A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against the corporate defendant.  Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual

prosecution of this litigation.  Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgment.

78.     Further, the New York Class Representatives and the Class have been equally affected by Defendants' failure to pay proper wages and provide proper wage notices and statements.

79.     This action is properly maintainable as a class action under Rule 23.

## COMMON FACTUAL ALLEGATIONS

80.     Plaintiffs and Class Members have been victims of Defendants' common policy and plan that has violated their rights under the FLSA and NYLL by requiring AGMs to work over 40-hours a week without overtime pay, shifts with a spread of over 10 hours a day without the benefit of spread-of-hours pay.

81.     At all times relevant, Defendants' unlawful policy and pattern or practice has been willful.

82.     The work performed by Plaintiffs and Class Members was assigned by Defendants.

83.     Defendants are aware of all work and work hours that Plaintiffs and the Class Members performed.

### *AGMs Are Misclassified as Exempt from the Overtime and Spread-of-Hours Requirements*

84.     Plaintiffs' and the Class Members' primary duties were not managerial.

85.     Plaintiffs' and the Class Members' primary duties were non-exempt duties, including performing the same duties of the hourly-paid non-exempt employees.

86.     Plaintiffs' and the Class Members' primary duties included but were not limited to preparing and cooking food in the kitchen, "working the line" i.e., creating dishes specific to customer orders, bringing ice to the ice machine, bagging tortilla chips, maintaining a clean area,

filling takeout orders, working the cash register, receiving deliveries, inventory, and counting the registers. Plaintiffs and Class Members spent most of their time performing these non-exempt duties.

87.     Plaintiffs and the Class Members were closely supervised by the Owners, General Managers, and Exempt AGMs.

88.     The Owners, General Managers, and Exempt AGMs were responsible for the overall performance of the stores, and for hiring, firing, coaching, and developing employees.

89.     Plaintiffs and the Class Members did not exercise a meaningful degree of independent discretion with respect to the exercise of their duties and were required to follow the policies, practices, and procedures set by Defendants.

90.     Plaintiffs and the Class Members did not have any independent discretionary authority to deviate from these policies, practices, and procedures.

91.     Plaintiffs and the Class Members did not have independent authority to create or implement management policies, practices, and procedures for Defendants.

92.     Plaintiffs and the Class Members did not have independent authority to commit Defendants in matters having significant financial impact.

93.     Plaintiffs and the Class Members did not have independent authority to set employees' wages.

94.     Plaintiffs and the Class Members did not have independent authority to determine how many labor hours could be allocated to their store.

95.     Plaintiffs and the Class Members did not have independent authority to hire, fire, or promote employees.

***AGMs Regularly Work Over 40 Hours in a Week***

96.     AGMs regularly work over 40 hours in a workweek.

97.     Defendants, however, do not pay AGMs overtime pay.

98.     That is, Defendants do not pay AGMs one and one-half times their regular rate for all hours worked over 40 each workweek.

***AGMs Regularly Work a Spread of Over 10 Hours in a Day***

99.     AGMs regularly work a spread of over 10 hours in a workday.

100.    Defendants, however, do not pay AGMs an additional hour at the minimum wage for each shift that exceeds a 10-hour period.

***AGMs Did Not Receive Wage Notices***

101.    Defendants did not provide Plaintiffs and Class Members with a wage notice within 10 days of the start of their employment.

102.    Defendants' failure to provide Plaintiffs and Class Members pay notices facilitated Defendants' policy and practice of misclassifying AGMs.

***Inaccurate Wage Statements***

103.    Defendants did not provide Plaintiffs and Class Members with an accurate wage statement each pay period.

104.    Defendants' failure to report Plaintiffs' and Class Members' actual hours worked and basis of pay facilitated its unlawful overtime policy.

105.    That is, Defendants failed to provide AGMs with the information necessary to determine whether their weekly hours ever exceeded 40 in a single workweek, entitling them to overtime.

106. The wage statements, with some exceptions, did not indicate all workers worked, overtime pay, or spread of hours pay.

107. As a result, Defendants did not furnish Plaintiffs and Class Members with an accurate statement of, *inter alia*, hours worked and basis of pay as required by NYLL.

108. This hindered Plaintiffs' and Class Members' ability to challenge the unlawful wage payment at the time of the payment.

**Defendants' Actions Were Willful and Done Without Reasonable Good Faith**

109. Upon information and belief, a reasonable employer inquiring into this issue would have determined that AGMs are not exempt from the FLSA and NYLL overtime requirements, and NYLL spread of hours requirement.

110. Defendants cannot claim an executive exemption under the FLSA and NYLL based on the duties prong.

111. Defendants' AGMs are not required to have more than a high school diploma nor any special training to work for Defendants.

**Defendants' NYLL Violations were Willful and Widespread**

112. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy that violates the NYLL. Defendants' policy and pattern or practice includes but is not limited to:

a. Willfully requiring AGMs to work over 40 hours a week;

b. Willfully requiring AGMs to work shifts with a spread-of-hour longer than 10 hours;

c. Willfully failing to pay AGMs overtime wages;

d. Willfully failing to pay AGMs, including Plaintiffs and Class Members, spread-of-hours wages;

e.      Willfully failing to provide AGMs, with wage notices; and

f.      Willfully failing to provide AGMs, with accurate wage statements.

113.    Defendants were or should have been aware that the NYLL required them to pay AGMs overtime pay.

114.    Defendants were or should have been aware that the NYLL required them to pay AGMs an additional hour at the minimum wage rate for each shift that spanned over a 10-hour period.

115.    Defendants were or should have been aware that the NYLL required them to provide AGMs with wage notices.

116.    Defendants were or should have been aware that the NYLL required them to provide AGMs with accurate wage statements.

117.    Defendants' failure to pay Plaintiffs and Class Members proper overtime wages was willful, intentional, and in bad faith.

118.    Defendants' failure to pay Plaintiffs and Class Members proper spread-of-hours wages was willful, intentional, and in bad faith.

119.    Defendants' failure to provide Plaintiffs and Class Members proper pay notices was willful, intentional, and in bad faith.

120.    Defendants' failure to provide Plaintiffs and Class Members proper wage statements was willful, intentional, and in bad faith.

121.    Defendants' unlawful conduct was widespread, repeated, and consistent.

122.    Regardless of the location at which Plaintiffs and Class Members worked for Defendants, Defendants' policies and practices remained substantially the same.

## INDIVIDUAL FACTUAL ALLEGATIONS

***Plaintiff Christopher Balk***

123.    Defendants employed Mr. Balk from approximately June 20, 2021 through August 23, 2022.

124.    At all relevant times, Mr. Balk was employed as an AGM at Cabo Fresh Stony Brook.

125.    At all relevant times, during most workweeks, Mr. Balk worked more than 50 hours per week.

126.    For example, from May 2, 2022 to May 8, 2022 Mr. Balk worked 54.32 hours.

127.    At all times relevant, Mr. Balk was entitled to receive overtime pay for all hours worked over 40.

128.    Mr. Balk regularly worked five days a week.  For example, from May 2, 2022 to May 8, 2022, Mr. Balk worked the following hours:  May 3 – 12:00 p.m. to 11:28 p.m.; May 5 – 12:01 p.m. to 11:32 p.m.; May 6 – 1:52 p.m. to 11:16 p.m.; May 7 – 12:35 p.m. to 11:04 p.m.; and May 8 – 9:33 a.m. to 11:21 p.m.

129.    Cabo Fresh Stony Brook paid Mr. Balk a weekly salary of $1,298.08.

130.    Defendants failed to compensate Mr. Balk for time worked in excess of 40 hours per week at a rate of at least one and one-half times his regular rate, throughout the entire term of his employment with Defendants.

131.    Despite working shifts with a spread of hours exceeding 10 hours, Defendants failed to pay Mr. Balk an additional hour of pay at the minimum wage when he worked such a shift.

132.   At all times relevant, Mr. Balk was entitled to receive spread of hours pay for all shifts lasting 10 or more hours.

133.   Defendants failed to furnish Mr. Balk with an accurate statement of wages listing hours worked.

134.   Mr. Balk's primary job duties did not entail work in an executive, administrative, or professional capacity.

135.   Mr. Balk's job duties included but were not limited to "working the line" i.e., creating dishes specific to customer orders, bringing ice to the ice machine, bagging tortilla chips, maintaining a clean area, filling takeout orders, working the cash register, receiving deliveries and inventory.

136.   As a result, Mr. Balk was a non-exempt worker entitled to overtime and spread of hour wages.

137.   Defendants failed to furnish Mr. Balk with a wage notice listing his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with N.Y. Lab. Law § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a  mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

138.   Defendants failed to supply Mr. Balk with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay

and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

***Plaintiff Anthony Gallway***

139.    Defendants employed Mr. Gallway from approximately May 27, 2022 through August 25, 2022.

140.    At all relevant times, Mr. Gallway was employed as an AGM at Cabo Fresh Stony Brook.

141.    At all relevant times, during most workweeks, Mr. Gallway worked more than 50 hours per week.

142.    For example, from August 1, 2022 to August 7, 2022 Mr. Gallway worked 53.89 hours.

143.    At all times relevant, Mr. Gallway was entitled to receive overtime pay for all hours worked over 40.

144.    Mr.  Gallway regularly worked five days a week.  For example, from August 1, 2022 to August 7, 2022, Mr. Gallway worked the following hours:  August 1 – 12:18 p.m. to 11:48 p.m.; August 4 – 9:32 a.m. to 11:25 p.m.; August 5 – 10:12 a.m. to 11:16 p.m.; August 6 – 4:02 p.m. to 11:43 p.m.; and August 7 – 10:16 a.m. to 11:07 p.m.

145.    Cabo Fresh Stony Brook paid Mr. Gallway a weekly salary of $1,125.00.

146.    Defendants failed to compensate Mr. Gallway for time worked in excess of 40 hours per week at a rate of at least one and one-half times his regular rate, throughout the entire term of his employment with Defendants.

147.    At all times relevant, Mr. Gallway was entitled to receive spread of hours pay for all shifts lasting 10 or more hours.

148.    Defendants failed to furnish Mr. Gallway with an accurate statement of wages listing hours worked.

149.    Mr. Gallway's primary job duties did not entail work in an executive, administrative, or professional capacity.

150.    Mr. Gallway's job duties included but were not limited to "working the line" i.e., creating dishes specific to customer orders, bringing ice to the ice machine, bagging tortilla chips, maintaining a clean area, filling takeout orders, working the cash register, and receiving deliveries.

151.    As a result, Mr. Gallway was a non-exempt worker entitled to overtime and spread of hours wages.

152.    Defendants failed to furnish Mr. Gallway with a notice of pay listing his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with N.Y. Lab. Law § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a  mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

153.    Defendants failed to supply Mr. Gallway with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number

of hours worked, including overtime hours worked if applicable; deductions; and net wages.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act
### Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

154.     Plaintiffs incorporate by reference all preceding allegations.

155.     Plaintiffs along with the FLSA Collective are non-exempt employees entitled to be

paid overtime compensation for all overtime hours worked.

156.     Defendants employed Plaintiffs and members of the FLSA Collective for

workweeks longer than 40 hours and willfully did not compensate Plaintiffs and the FLSA

Collective for all the time worked in excess of 40 hours per week, at a rate of at least one and one-

half times their regular hourly rate, in violation of the requirements of 29 U.S.C. § 207(a) (1).

157.     Plaintiffs expressed their consent to make these claims against Defendants by filing

a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A (Consents).

158.     Defendants did not make a good faith effort to comply with the FLSA with respect

to their compensation to Plaintiffs and the FLSA Collective.

159.     Because Defendants violations of the FLSA were willful, a three-year statute of

limitations applies, pursuant to 29 U.S.C. § 255.

160.     As a consequence of the underpayment of wages, alleged above, Plaintiffs and the

Collective have incurred damages thereby and Defendants are indebted to them in the amount of

the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and

costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### New York Labor Law
### Unpaid Overtime
### (Brought on behalf of the Plaintiffs and the Class)

161.   Plaintiffs incorporate by reference all preceding allegations.

162.   At all times relevant, Plaintiffs and Class Members were employees by Defendants and were their employer within the meaning of the NYLL.

163.   Defendants failed to pay Plaintiffs and Class Members at a rate of less than one and one-half time their regular rate for all hours worked.

164.   By the course of conduct set forth above, Defendants violated NYLL § 650, *et seq.*; Hospitality Wage Order, 12  N.Y.C.R.R. § 146-1.6.

165.   Defendants' failure to pay all overtime compensation due to Plaintiffs and Class Members was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

166.   As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and Class Members incurred damages thereby and Defendants are indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Defendants unlawful and willful conduct, as the Court deems just and proper.

167.   Plaintiffs further seek the recovery liquidated damages, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

## THIRD CAUSE OF ACTION
### New York Labor Law
### Spread of Hours Pay
### (Brought on behalf of Plaintiffs and the Class)

168.   Plaintiffs reallege and incorporate all allegations in all preceding paragraphs.

169.   Plaintiffs and Class Members worked shifts in which the spread of hours exceeded 10 hours, as defined by 12 N.Y.C.R.R. § 146-1.6.

170.     Throughout the six years prior to the filling of this Class Action Complaint there have been times in which Plaintiffs and Class Members were entitled to an additional hour of pay at the "basic minimum hourly rate," as defined by 12 N.Y.C.R.R. § 146-1.2(1)-(2).

171.     Defendants failed to pay Plaintiffs and Class Members one additional hour pay at the basic minimum wage rate before allowances for each day Plaintiffs and Class Members spread of hours exceeded 10 hours, in violation of N.Y. Lab. Law §§ 650, *et seq*., as codified by 12 N.Y.C.R.R. § 146-1.6.

172.     Defendants lacked a good faith basis, within the meaning of N.Y. Lab. Law § 663, to believe its failure to pay Plaintiffs and Class Members an additional hour of pay for each day where the spread of hours exceeded 10 complied with the NYLL.

173.     As a result, Defendants owe Plaintiffs and Class Members their unpaid spread-of-hours pay, together with liquidated damages, interest, attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**New York Labor Law**
**Failure to Provide Wage Notices**
**(Brought on behalf of Plaintiffs and the Class)**

174.     Plaintiffs incorporate by reference all allegations in all preceding paragraphs.

175.     Defendants failed to supply Plaintiffs and Class Members and the members notice as required by N.Y. Lab. Law § 195, in English or in the language identified by Plaintiffs and the members of the New York Class as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with N.Y. Lab. Law § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a  mailing address if

different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

176.    Due to Defendants' violations of N.Y. Lab. Law § 195, for each workweek that Defendants failed to provide a proper wage notice at the time of hiring, Plaintiffs and Class Members are entitled to damages of $50 per workday, or a total of $5,000 per Class Member, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

**FIFTH CAUSE OF ACTION**
**New York Labor Law**
**Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiffs and the Class)**

177.    Plaintiffs reallege and incorporate all allegations in all preceding paragraphs.

178.    Defendants failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

179.    Due to Defendants' violations of N.Y. Lab. Law § 195, for each workweek that Defendant failed to provide a proper wage statement, Plaintiffs and Class Members are each entitled to damages of $250 per workday, or a total of $5,000 per class member, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek for the following relief:

A.      That, at the earliest possible time, Plaintiffs be allowed to give notice of this class action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, were employed by Defendants AGMs at Cabo Fresh restaurants owned and/or operated by Defendants.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid overtime pay and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C.      Unpaid overtime pay and liquidated damages permitted by law pursuant to the NYLL;

D.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.      Appointment of Plaintiffs as Class Representatives;

F.      Appointment of Kessler Matura P.C. as Class Counsel;

G.      Liquidated damages;

H.      Statutory damages, as provided for by N.Y. Lab. Law §§ 195 and 198, for Defendant's violations of the notice and recordkeeping requirements pursuant to N.Y. Lab. Law § 195;

I.      Attorney's fees and costs of the action;

J.      Pre-judgment interest and post-judgment interest as provided by law;

K.      A declaratory judgment that the practices complained of are unlawful; and

L.      Reasonable incentive awards for Plaintiffs to compensate them for the time they spent attempting to recover wages for the Class and for the risks they took in doing so; and

M.      Such other relief as this Court shall deem just and proper.

Dated: Melville, New York
       November 30, 2022

Respectfully submitted,

By: /s/  Troy L. Kessler
        Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
Jocelyn Small
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
jsmall@kesslermatura.com

*Attorneys for Plaintiffs and the Putative*
*FLSA Collective and Putative Class*

25